AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) | FILED ____ LODGED |
| | ) | ____ RECEIVED |
| A Facebook account, more particularly described in Attachment A | ) | Case No. |
| | ) | MJ18-5192 |

**FILED ____ LODGED**
**____ RECEIVED**

**AUG 15 2018**

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY                                   DEPUTY

Case No.

MJ18-5192

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, attached hereto and incorporated by reference herein.

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached hereto and incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841(a)(1) and 846 | Distribution of and Conspiracy to Distribute Controlled Substances |

The application is based on these facts:

See Affidavit of DEA Special Agent Samuel T. Landis.

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of _365_ days (give exact ending date if more than 30 days: _08/14/2019_ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

**Samuel T. Landis, Special Agent**
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _8/15/18_

_____
*Judge's signature*

City and state: Tacoma, Washington

**David W. Christel, United States Magistrate Judge**
*Printed name and title*

**AFFIDAVIT**

STATE OF WASHINGTON     )
                                 )    ss
COUNTY OF PIERCE           )

       I, Samuel T. Landis, Special Agent, Drug Enforcement Administration (DEA), United States Department of Justice, being first duly sworn on oath, depose and state:

### MY BACKGROUND AND QUALIFICATIONS

       1.      I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

       2.      I am a Special Agent with the Drug Enforcement Administration (DEA), and have been since March of 2016. Currently, I work in the Seattle Field Division, Tacoma Resident Office. Prior to my employment with the DEA, I worked as a Border Patrol Agent from November 2009 to March 2016.

       3.      I received formal training at the DEA Basic Agent Training Academy in Quantico, Virginia. The 22-week training included comprehensive, formalized instruction in, among other things: basic narcotic investigations, drug identification and detection, familiarization with United States narcotics laws, financial investigations and money laundering, identification and seizure of drug-related assets, organized crime investigations, physical and electronic surveillance, and undercover operations. In addition to Basic Agent Training, I have completed Money Laundering Training, Traps and Concealed Compartments Training, and other various courses that have familiarized me with investigations of drug trafficking organizations, methods of importation and distribution of controlled substances, and financial investigations.

       4.      During the course of my law enforcement career, I have been involved in investigations of narcotics offenses, including offenses involved in this current investigation. I have participated in criminal investigations of drug-trafficking

AFFIDAVIT OF SAMUEL T. LANDIS - 1
USAO 2017R01238

1  organizations (DTOs), ranging from street-level dealers to larger dealers, including

2  Mexican-based DTOs.  These investigations have included the unlawful importation,

3  possession with intent to distribute, and distribution of controlled substances; the related

4  laundering of monetary instruments; the conducting of monetary transactions involving

5  the proceeds of specified unlawful activities; and conspiracies associated with these

6  offenses.

7        5.      As noted above, prior to my employment with the DEA, I worked for the

8  United States Border Patrol as a Border Patrol Agent for more than six years.  During my

9  time as a Border Patrol Agent, I intercepted narcotics from narcotics

10  traffickers/smugglers as part of my regular duties.  Furthermore, I assisted the DEA and

11  Homeland Security Investigations with mid- and upper-level drug investigations in at

12  least fifteen cases.  My experience as a Border Patrol Agent familiarized me with the

13  methods used by narcotics traffickers/smugglers to transport narcotics to transport

14  narcotics, firearms, and bulk currency into and out of the United States.

15                        **PURPOSE OF AFFIDAVIT**

16        6.      This Affidavit is submitted in support of an application for a search warrant

17  under Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A)

18  to require Facebook to disclose to the government records and other information in its

19  possession, pertaining to the subscriber or customer associated with the following

20  Facebook account (referred to as SUBJECT ACCOUNT 9):

21              a.      Facebook user ID rudy.jackson.7509, registered under the name

22  RUDY JACKSON.

23        7.      All of the requested information is stored at premises owned, maintained,

24  controlled, or operated by Facebook, a social networking company headquartered in

25  Menlo Park, California.  The information to be searched is described in the following

26  paragraphs and in Attachment B.  This is the first application for a search warrant for

27  SUBJECT ACCOUNT 9 in this investigation.

28

AFFIDAVIT OF SAMUEL T. LANDIS - 2
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

# FACEBOOK INFORMATION STORAGE

8.     I am aware from my experience and training, and consultation with other investigators, of the following information about Facebook:

9.     Facebook owns and operates a free-access social networking website of the same name, accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the public.

10.    Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail address(es), Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Facebook also assigns a user identification number to each account.

11.    I know from speaking with other law enforcement that "cookies" are small files placed by a server (such as those used by Facebook) on a device to track the user and potentially verify a user's authentication status across multiple sites or webpages.  This cookie could be unique to a particular account (e.g., the Facebook account) or to a given device (e.g., the particular phone used to access the Facebook account).  The next time a user visits a particular site or server, the server will ask for certain cookies to see if the server has interacted with that user before.  Cookies can also be used to determine "machine cookie overlap," or multiple accounts that have been accessed by the same individual machine (e.g., two Facebook accounts that have been accessed on the same phone).  The machine cookie overlap thus allows Facebook to track accounts that are "linked" to each other because the same user account (username on a computer) on the same device accessed multiple Facebook accounts.  This can identify either multiple Facebook accounts used by the same person or different people sharing

AFFIDAVIT OF SAMUEL T. LANDIS - 3
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    the same user account and device.  In either case, the machine cookie overlap means that

2    the users of the linked accounts are the same person or two people in close proximity to

3    each other (by virtue of them using the same device).

4         12.    Facebook users may join one or more groups or networks to connect and

5    interact with other users who are members of the same group or network.  Facebook

6    assigns a group identification number to each group.  A Facebook user can also connect

7    directly with individual Facebook users by sending each user a "Friend Request."  If the

8    recipient of a "Friend Request" accepts the request, then the two users will become

9    "Friends" for purposes of Facebook and can exchange communications or view

10   information about each other.  Each Facebook user's account includes a list of that user's

11   "Friends" and a "News Feed," which highlights information about the user's "Friends,"

12   such as profile changes, upcoming events, and birthdays.

13        13.    Facebook users can select different levels of privacy for the

14   communications and information associated with their Facebook accounts.  By adjusting

15   these privacy settings, a Facebook user can make information available only to himself or

16   herself, to particular Facebook users, or to anyone with access to the Internet, including

17   people who are not Facebook users.  A Facebook user can also create "lists" of Facebook

18   friends to facilitate the application of these privacy settings.  Facebook accounts also

19   include other account settings that users can adjust to control, for example, the types of

20   notifications they receive from Facebook.

21        14.    Facebook users can create profiles that include photographs, lists of

22   personal interests, and other information.  Facebook users can also post "status" updates

23   about their whereabouts and actions, as well as links to videos, photographs, articles, and

24   other items available elsewhere on the Internet.  Facebook users can also post information

25   about upcoming "events," such as social occasions, by listing the event's time, location,

26   host, and guest list.  In addition, Facebook users can "check in" to particular locations or

27   add their geographic locations to their Facebook posts, thereby revealing their geographic

28   locations at particular dates and times.  A particular user's profile page also includes a

AFFIDAVIT OF SAMUEL T. LANDIS - 4
USAO 2017R01238

1   "Wall," which is a space where the user and his or her "Friends" can post messages,

2   attachments, and links that will typically be visible to anyone who can view the user's

3   profile.

4       15.     Facebook allows users to upload photos and videos.  It also provides users

5   the ability to "tag" (i.e., label) other Facebook users in a photo or video.  When a user is

6   tagged in a photo or video, he or she receives a notification of the tag and a link to see the

7   photo or video.  For Facebook's purposes, the photos and videos associated with a user's

8   account will include all photos and videos uploaded by that user that have not been

9   deleted, as well as all photos and videos uploaded by any user that have that user tagged

10  in them.

11      16.     Facebook users can exchange private messages on Facebook with other

12  users.  These messages, which are similar to e-mail messages, are sent to the recipient's

13  "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well

14  as other information.  Facebook users can also post comments on the Facebook profiles

15  of other users or on their own profiles; such comments are typically associated with a

16  specific posting or item on the profile.  In addition, Facebook has a Chat feature that

17  allows users to send and receive instant messages through Facebook.  These chat

18  communications are stored in the chat history for the account.  Facebook also has a Video

19  Calling feature, and although Facebook does not record the calls themselves, it does keep

20  records of the date of each call.

21      17.     If a Facebook user does not want to interact with another user on Facebook,

22  the first user can "block" the second user from seeing his or her account.

23      18.     Facebook has a search function that enables its users to search Facebook for

24  keywords, usernames, or pages, among other things.

25      19.     Each Facebook account has an activity log, which is a list of the user's

26  posts and other Facebook activities from the inception of the account to the present.  The

27  activity log includes stories and photos in which the user has been tagged, as well as

28  connections made through the account, such as "liking" a Facebook page or adding

AFFIDAVIT OF SAMUEL T. LANDIS - 5
USAO 2017R01238

1 | someone as a friend.  The activity log is visible to the user but cannot be viewed by
2 | people who visit the user's Facebook page.

3 |     20.    Facebook Notes is a blogging feature available to Facebook users, and it
4 | enables users to write and post notes or personal web logs ("blogs"), or to import their
5 | blogs from other services, such as Xanga, LiveJournal, and Blogger.

6 |     21.    In addition to the applications described above, Facebook also provides its
7 | users with access to thousands of other applications on the Facebook platform.  When a
8 | Facebook user accesses or uses one of these applications, an update about that the user's
9 | access or use of that application may appear on the user's profile page.

10 |     22.    Some Facebook pages are affiliated with groups of users, rather than one
11 | individual user.  Membership in the group is monitored and regulated by the
12 | administrator or head of the group, who can invite new members and reject or accept
13 | requests by users to enter.  Facebook can identify all users who are currently registered to
14 | a particular group and can identify the administrator and/or creator of the group.
15 | Facebook uses the term "Group Contact Info" to describe the contact information for the
16 | group's creator and/or administrator, as well as a PDF of the current status of the group
17 | profile page.

18 |     23.    Facebook uses the term "Neoprint" to describe an expanded view of a given
19 | user profile.  The "Neoprint" for a given user can include the following information from
20 | the user's profile:  profile contact information; News Feed information; status updates;
21 | links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists,
22 | including the friends' Facebook user identification numbers; groups and networks of
23 | which the user is a member, including the groups' Facebook group identification
24 | numbers; future and past event postings; rejected "Friend" requests; comments; gifts;
25 | pokes; tags; and information about the user's access and use of Facebook applications.

26 |     24.    Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP
27 | address.  These logs may contain information about the actions taken by the user ID or IP
28 | address on Facebook, including information about the type of action, the date and time of

AFFIDAVIT OF SAMUEL T. LANDIS - 6
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   the action, and the user ID and IP address associated with the action.  For example, if a

2   user views a Facebook profile, that user's IP log would reflect the fact that the user

3   viewed the profile, and would show when and from what IP address the user did so.

4       25.     Social networking providers like Facebook typically retain additional

5   information about their users' accounts, such as information about the length of service

6   (including start date), the types of service utilized, and the means and source of any

7   payments associated with the service (including any credit card or bank account number).

8   In some cases, Facebook users may communicate directly with Facebook about issues

9   relating to their accounts, such as technical problems, billing inquiries, or complaints

10  from other users.  Social networking providers like Facebook typically retain records

11  about such communications, including records of contacts between the user and the

12  provider's support services, as well as records of any actions taken by the provider or

13  user as a result of the communications.

14      26.     Therefore, the computers of Facebook are likely to contain all the material

15  described above, including stored electronic communications and information concerning

16  subscribers and their use of Facebook, such as account access information, transaction

17  information, and other account information.  I believe such information is likely to

18  constitute evidence of the drug trafficking crimes currently under investigation.

19                          **SUMMARY OF PROBABLE CAUSE**

20      27.     The information set forth in this Affidavit consists of information I have

21  gathered and observed firsthand through the course of this investigation to date, as well

22  as information relayed to me by other law enforcement personnel, my review of law

23  enforcement reports, interviews of witnesses, and my review and analysis of toll records.

24  Since I am submitting this Affidavit for the limited purpose of obtaining authorization to

25  search SUBJECT ACCOUNT 9 as described herein, I have not included every fact

26  known to me concerning this investigation.  I have set forth only the facts that I believe

27  are essential to establish the necessary foundation for the issuance of such warrant.

28

AFFIDAVIT OF SAMUEL T. LANDIS - 7
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

*Background Information Regarding Investigation*

28.     CS1 agreed to cooperate with law enforcement in 2017, in exchange for judicial considerations.  CS1 was arrested by members of the Bremerton Police Department (BPD) Special Operations Group (SOG) for his/her involvement in drug trafficking.  CS1 cooperated with SOG and provided them with information about a group of Mexican drug traffickers who were distributing large amounts of heroin in the Puget Sound region.  CS1 advised SOG that he/she had been selling various controlled substances for several years and had been in contact with several of the people within this group of Mexican drug traffickers, which agents have identified as the CASTRO DTO.

29.     Within that organization, CS1 connected with a prominent drug trafficker whom the CS knew as "Juan" or "Jose."  CS1 believed the individual he/she knew as "Juan" was the local leader of the drug distribution at that time, and was later promoted to a larger role in the DTO.  BPD Detective Jordan Ejde located a Facebook account under the name of "Juan Andres CASTRO Valenzuela" (Subject Account 2, the target of a prior search warrant issued by this Court)) that CS1 and other local suspected drug dealers were associated with.  Det. Ejde questioned CS1 about the account and CS1 confirmed CASTRO was the male whom he/she referred to as "Juan" or "Jose."  CS1 also showed Det. Ejde messages confirming that CASTRO had been in (then) recent contact with the CS, using Subject Account 2.  According to CS1 and the Facebook data he/she provided, CS1 had been talking to CASTRO via Facebook Messenger for purposes of making drug transactions since approximately June of 2016.

30.     A review of the CS's Facebook account showed CASTRO also contacted CS1 from additional Facebook accounts under the names of "Rebeca Spencer" (Subject Account 5), "Annel Baker" (Subject Account 4), and "Katherine Thomas" (Subject Account 1).  All three of those accounts have also been the target of search warrants issued by this Court.  A review of CS1's phone showed CASTRO also used Mexican phone numbers 52-668-199-4039, 52-668-248-4230, 52-668-225-5890, and 52-668-199-5533 to communicate with CS1 via text message and voice calls.  Subject Account 1 and

AFFIDAVIT OF SAMUEL T. LANDIS - 8
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  phone number 52-668-199-4039 were CASTRO's most current methods of drug related

2  communications with CS1 (at that time).

3      31.    Det. Ejde and DEA Special Agent (SA) Anthony DelVecchio have

4  confirmed CASTRO's identity via the Washington State Department of Licensing

5  (WADOL).  Specifically, CASTRO's WADOL photograph matches that of the individual

6  on Subject Account 2.  Furthermore, according to a law enforcement database, CASTRO

7  was involved as a suspected "cell head" for heroin distribution in the Everett area during

8  a DEA investigation that took place in 2012.  SA DelVecchio researched this prior DEA

9  case and found that CASTRO was, in fact, the primary target of investigation within that

10  case.

11      32.    Based on how CASTRO first interacted with CS1, I believe CASTRO used

12  Subject Account 2 for initially contacting his suspected drug redistributors/customers.

13  When CASTRO first contacted the CS via Facebook Messenger, he used Subject

14  Account 2.  After a brief introduction utilizing Subject Account 2, CASTRO switched

15  over to a more discrete account(s), e.g., Subject Account 4 and/or Subject Account 5, for

16  the actual organizing of the suspected drug transactions.  I believe that by having a

17  picture of himself [CASTRO] as the account user for Subject Account 2, it helped his

18  redistributors/customers recognize him in addition to him building a rapport with them.

19      33.    CASTRO used Subject Account 1, Subject Account 2, Subject Account 4,

20  Subject Account 5, and an account registered in the name "Alissa Keyser" (Subject

21  Account 6), as well as various telephone numbers, to set up drug deals with CS1.

22      34.    SOG used CS1 to conduct six controlled buys of suspected heroin from the

23  CASTRO DTO.  Once the DEA began working with SOG, investigators used CS1 to

24  conduct a seventh controlled purchase toward the end of October 2017.  CS1 was able to

25  introduce an undercover DEA agent (UC) to the CASTRO DTO towards the end of 2017.

26      35.    CS1's criminal history includes a felony conviction for

27  Manufacture/Deliver a Schedule I/II Narcotic in 2013, gross misdemeanor convictions

28  for Fourth Degree Assault in 2015 and Third Degree Malicious Mischief in 2011, as well

AFFIDAVIT OF SAMUEL T. LANDIS - 9
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  as misdemeanor convictions for Third Degree Driving With a Suspended or Revoked

2  License in 2018 and 2008, Indecent Exposure in 2013, and Third Degree Malicious

3  Mischief in 2006.

4      36.    Unfortunately, CS1 was battling heroin addiction for most of the time

5  he/she was working with agents.  Agents provided CS1 with access to drug treatment

6  programs and got CS1 enrolled in a rehabilitation center; they even arranged for atypical

7  expense reimbursements for CS1.  Rather than cash reimbursement for expenses incurred

8  during government operations, agents provided CS1 with food cards or gasoline—things

9  that were not readily convertible into cash.  Agents did so at the request of CS1, so he/she

10  would not be tempted to purchase drugs with any excess money.  These methods worked

11  for a time, and CS1 successfully completed several months of his/her rehabilitation

12  program before staff asked CS1 to leave due to his/her attitude problems and problems

13  with other rehabilitation patients.

14      37.    CS1 continued to help agents by providing information about the DTO and

15  helping to build the UC's reputation.  However, CS1 relapsed into heroin use in the

16  spring of 2018.  This time, CS1 quite rapidly spiraled downward into an almost paranoid

17  and delusional state.  Agents determined they could no longer use CS1 for any

18  investigative purposes, but tried once again to get CS1 some help with his/her drug

19  problem.  Unfortunately, CS1 was not as amenable on this occasion and shunned agents'

20  attempts at providing assistance.  In May 2018, local police arrested CS1 and charged

21  him/her with residential burglary (felony) and driving with a suspended or revoked

22  license (misdemeanor).  SOG deactivated CS1 in May 2018 due to CS1's substance

23  abuse issues.  However, agents found CS1's information to be reliable during the time

24  agents utilized him/her to gather information.

25  ***Undercover Controlled Purchase #1 Utilizing Subject Account 1***

26      38.    In early November 2017, SOG provided DEA agents, including the UC,

27  with the various phone numbers and Facebook accounts they believed CASTRO and

28  SARMIENTO used for drug trafficking purposes.

AFFIDAVIT OF SAMUEL T. LANDIS - 10
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

39.     On November 14, 2017, CS1 sent the UC an invitation to join a group Facebook Messenger chat session, which linked the UC in communication with Subject Account 1.  CASTRO and the UC then engaged in conversation regarding CASTRO's pricing for heroin.  On November 16, 2017, agents conducted an undercover purchase of heroin from CASTRO (through one of the DTO's couriers) in Tacoma, Washington.  The UC contacted CASTRO on 52-668-199-4039 (Target Telephone 1 or TT1) and through Subject Account 1 prior to this transaction in order to facilitate the meeting.

40.     After the UC met with the courier and the transaction was completed, agents transported the suspected heroin to the DEA Tacoma Resident Office and weighed it; it weighed approximately 87.4 gross grams.

***Undercover Controlled Purchase #2 Utilizing Subject Account 1***

41.     On November 27, 2017, the UC received a text message from CASTRO (TT1).  During this conversation, the UC and CASTRO discussed a future drug transaction for four ounces of heroin that would later occur on November 30, 2017.  On November 30, the UC again met with the DTO's courier, this time in Federal Way, Washington.  Prior to the controlled buy, the UC initiated a Facebook Messenger conversation with CASTRO through Subject Account 1.  Using Subject Account 1, CASTRO told the UC that he changed the meet location from the Tacoma Mall to Federal Way, Washington.  After the UC arrived at the new meeting location, he/she received two calls from CASTRO.  Of note, Facebook Messenger has telephone call capabilities as well as video chat.  The first phone call came through Facebook Messenger under Subject Account 1, and the second call came from TT1.

42.     The courier eventually arrived in at the new meeting location, and the UC and the courier completed the transaction.  Agents transported the suspected heroin to the TRO and weighed it; it weighed approximately 136.1 gross grams.

43.     Shortly after the UC and the courier parted ways, CASTRO sent a large "thumbs up" graphic to the UC via Subject Account 1, indicating a successful drug transaction.

AFFIDAVIT OF SAMUEL T. LANDIS - 11
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

*Undercover Controlled Purchase #3 Utilizing Subject Account 1*

44.     On December 15, 2017, at 11:16 a.m., the UC attempted to call CASTRO via Subject Account 1 on Facebook Messenger.  CASTRO did not answer the call, but typed a response at 11:17 a.m.  In those communications and others exchanged that day, CASTRO and the UC arranged a deal to take place in Kent, Washington.

45.     At approximately 1:45 p.m., the UC observed a vehicle pull up and park next to him.  The UC exited his vehicle, got into the vehicle's front passenger seat, and greeted the same DTO courier who delivered the heroin to the UC during the first two controlled buys.  The UC and the courier completed their transaction, and at 1:54 p.m., CASTRO sent a large "thumbs up" graphic to the UC via Subject Account 1 on Facebook messenger.

*Federal Search Warrant for Subject Account 1*

46.     On January 3, 2018, I obtained a search warrant from the United States District Court for the Western District of Washington for Subject Account 1, believed to be used by CASTRO in order to network and facilitate suspected drug transactions.  On January 17, 2018, during a search of the Facebook Messenger portion of the returned warrant materials, I found numerous suspected drug conversations between CASTRO and individuals whom agents believe, based on the content of those conversations and those individuals' respective criminal histories, are his drug redistributors/customers.

47.     During a search of the "Cookies" portion of Subject Account 1, I found an account registered in the name "Florencio CASTRO Valenzuela" (Subject Account 3) and Subject Account 4 listed as accounts linked to Subject Account 1.  On February 27, 2018, I contacted Facebook Support and asked how the accounts linked to each other, based on the data Facebook had provided.  Facebook Support staff informed me that Subject Account 1, Subject Account 3, and Subject Account 4 were all accessed by the same electronic device (one that is capable of accessing the World Wide Web) and under the same "cookie."  A "cookie" is a personal identifier for a specific browser that links to particular web portal.  This means CASTRO used the same electronic device to access

AFFIDAVIT OF SAMUEL T. LANDIS - 12
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  Subject Account 1, Subject Account 3, and Subject Account 4.  The electronic device

2  CASTRO uses remembers his web signature or "cookie" by storing his unique web

3  browsing on Facebook.  Anytime CASTRO reuses the same electronic device to browse

4  the web, e.g., Facebook, the device remembers his web identifiers for him.

5        48.    Also, while comparing the friends lists of Subject Account 1 through 6, I

6  found that Subject Account 1, Subject Account 4, and Subject Account 5 all had common

7  friends.  The "friends list" portion of Facebook is a list of other Facebook accounts

8  known to a specific account.  This allows users to set up communications easier.  Among

9  some of the friends in common between the Subject Account 1, 4 and 5, at least seven

10  friends have been in communication with CASTRO via Subject Account 1 for the

11  purposes of organizing suspected drug transactions.  Since CASTRO has a core group of

12  contacts logged, he is easily able to reach out to any of his suspected drug

13  redistributors/customers from any of his Facebook account(s).

14  ***Federal Search Warrant for Subject Accounts 1 Through 6***

15        49.    On March 8, 2018, I obtained a search warrant from the United States

16  District Court for the Western District of Washington for Subject Accounts 1 through 6,

17  all of which I believe to be used by CASTRO in order to network and facilitate suspected

18  drug transactions.  On March 29, 2018, during a search of the Facebook Messenger

19  portion of Subject Accounts 1 through 3 and 5 through 6 of the returned warrant

20  materials, I again found numerous suspected drug conversations between CASTRO and

21  individuals whom agents believe are his drug redistributors/customers.  Furthermore,

22  during a search of the "Cookies" portion of Subject Accounts 3 and 6, I found an account

23  registered under the name "Gina Morris" (Subject Account 7) listed as an account that

24  was accessed by the same electronic device and under the same "cookie" as the

25  aforementioned accounts.

26

27

28

AFFIDAVIT OF SAMUEL T. LANDIS - 13
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1      50.    When I looked at Subject Account 7's friends list and compared it to the

2  other Subject Accounts' friend lists (with the exception of Subject Account 4[1]), I found

3  that the accounts all had multiple friends in common.  Among the common friends were

4  accounts that had been in contact with Subject Account 1, Subject Account 5, and Subject

5  Account 6 for the purposes of organizing suspected drug transactions.

6  ***CASTRO Uses Subject Account 7 to Contact the CS***

7      51.    On April 9, 2018, CASTRO contacted CS1 using Subject Account 7 to

8  have CS1 help him register a white 2008 Honda Accord in Washington in exchange for

9  "stuff," or what I believe to be heroin.  CASTRO and CS1 arranged the vehicle

10  registration to take place on April 10, 2018

11      52.    During the morning hours of April 10, 2018, BPD Det. Ejde and Sergeant

12  Billy Renfro met with CS1 at a secure meeting location and searched the CS for any

13  contraband items, finding none.  CASTRO contacted CS1 using Subject Account 7 to

14  finalize their plans.  During these messaging exchanges, agents on surveillance at the

15  licensing office (located at 15600 Northeast 8th Street at the Bellevue Crossroads Mall)

16  did not see any of the known target vehicles in this investigation nor did they see the

17  white Honda Accord.  Agents suspected CASTRO's associates might have been at a

18  different licensing office in Bellevue (13133 Bel-Red Road, based on CS1's prior

19  conversations with CASTRO).  At about 10:00 a.m., agents brought CS1 to the licensing

20  office at the Crossroads Mall and maintained constant surveillance of CS1 from that point

21  onward.  Agents outfitted CS1 with a recording/transmitting device (EMD) once he/she

22  was in place at the Crossroads Mall.  At 10:17 a.m., CS1 electronically shared his/her

23  location with CASTRO and continued his/her messaging conversation with CASTRO

24  using Subject Account 7.  In the conversation, CS1 confirmed his/her current location

25  with CASTRO and, about twenty minutes later, agents saw another identified DTO

26

27

28

[1] According to the Facebook Law Enforcement Response Team, my historical data request for Subject Account 4 could not be processed because Subject Account 4 no longer existed.

AFFIDAVIT OF SAMUEL T. LANDIS - 14
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  courier and a male later identified as Juan Jose HIGUERA Gonzalez arrive at the Bel-

2  Red Auto Licensing.

3      53.    After the registration process (and a subsequent lunch) was complete, the

4  courier, HIGUERA, and CS1 met briefly in the parking lot, where the courier provided

5  CS1 with approximately 20 grams of suspected heroin.  CS1 met with SA DelVecchio

6  and Det. Ejde at a secure location and provided them with the 20 grams of suspected

7  heroin.  SA DelVecchio and Det. Ejde searched CS1 for contraband items and did not

8  find any items during that search.  CS1 later told SA DelVecchio and Det. Ejde that the

9  suspected heroin was the CS's "payment" for taking care of the vehicle registration and

10  insurance, as CS1 and CASTRO had discussed on April 9, 2018.

11  ***SUBJECT ACCOUNT 8 Contacts CS***

12      54.    On April 27, 2018, CS1 contacted agents in regards to his/her recent

13  contact with CASTRO.  According to CS1, he/she believed CASTRO created a new

14  Facebook account in order to contact his suspected local drug contacts in the Western

15  Washington area.  After agents acquired the account information from CS1, agents

16  located an account registered under the name "CHRIS HOLDFORD" (Subject Account

17  8) and, during a search of Subject Account 8's friends list, found that the majority of the

18  people listed were also on the friends lists for Subject Accounts 1 through 7.  Given this

19  similarity between all eight Subject Accounts and CASTRO's use of Facebook accounts

20  to communicate with his drug clientele (including CS1) in order to set up drug deals,

21  agents believe CASTRO created Subject Account 8 for the sole purpose of connecting

22  with his suspected drug clientele in order to further his suspected drug transactions.

23      55.    On June 27, 2018, SA DelVecchio obtained authorization from United

24  States District Court Judge Ronald B. Leighton to intercept wire and electronic

25  communications over 206-880-4903 (TT19), used by CASTRO DTO courier HIGUERA.

26  The interception of TT19 began on that same day and ended on July 9, 2018.  These

27  interceptions confirmed much of what agents already believed to be true about the

28  CASTRO DTO, including the fact that HIGUERA is a low-level drug and money courier

AFFIDAVIT OF SAMUEL T. LANDIS - 15
USAO 2017R01238

1  for the CASTRO DTO and has direct contact with some—but not all—of the CASTRO
2  DTO's distributors in Western Washington.
3      56.    Through these interceptions and corresponding surveillance, agents know
4  the CASTRO DTO has additional means of communication via electronic device(s).
5  Specifically, agents believe CASTRO and members of his DTO utilize applications like
6  Facebook Messenger and WhatsApp (an encrypted mobile communication application) in
7  order to facilitate drug transactions with their drug clientele, especially those not in the
8  inner circle of courier and management positions within the DTO.  Many of the
9  intercepted communications over TT19 were HIGUERA contacting suspected drug
10  redistributors in order to meet for drug transactions.  I believe some of the drug-related
11  communications prior to the intercepted communications were conducted over Subject
12  Account 8, namely, CASTRO orchestrating the deals, e.g., specifics about what type of
13  drug(s), quantities and prices for the drugs, and then having his local drug couriers, e.g.
14  HIGUERA, conduct the actual drug transactions.

15  ***Discovery of SUBJECT ACCOUNT 9***

16      57.    On July 3, 2018, I obtained a search warrant from the United States District
17  Court for the Western District of Washington for Subject Account 8, which I believe
18  CASTRO used in order to network and facilitate suspected drug transactions.  On July
19  19, 2018, during a search of the Facebook Messenger portion of the returned warrant
20  materials, I did not find any messages.  I found this to be highly unusual based on past
21  UC interactions with CASTRO over Facebook Messenger and information previously
22  gathered from the returned warrant materials for Subject Accounts 1 through 7.  I
23  contacted Facebook support staff via email on July 20, 2018, to find out if there were any
24  missing materials not included in the documents they provided.  Days later, I received a
25  phone call from Facebook's support staff.  During this call, I explained that in many of
26  my previously authorized requests, I had not experienced this absence of information.
27  Facebook support staff told me the user of Subject Account 8 may have deleted all of his
28  conversations over Facebook Messenger.  According to Facebook's support staff, if a

AFFIDAVIT OF SAMUEL T. LANDIS - 16
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  Subject Account user deletes his/her conversations over Facebook Messenger, Facebook
2  cannot provide the information, even if a search warrant is executed on a Subject
3  Account. This is because Facebook simply does not store deleted Facebook Messenger
4  messages/conversations. However, with a preservation request, Facebook can preserve
5  materials deleted by a Subject Account user and later produce them upon receipt of a
6  court order (warrant). With a preservation request, Facebook will store any deleted
7  conversations for any Subject Account for up to 90 days for law enforcement personnel.

8      58.    Despite the absence of Facebook Messenger materials for Subject Account
9  8 from the search warrant return, I did receive other data associated with the Subject
10  Account. Specifically, the phone number (TT20) associated with Subject Account 8 was
11  one agents previously identified as being used by the CASTROs. On July 10, 2018,
12  agents conducted an undercover purchase of suspected heroin from the CASTRO DTO,
13  through HIGUERA. The UC contacted the CASTRO brothers (on TT20) shortly after
14  11:00 a.m. and asked for "2 pieces" (or 50 grams) of heroin. The CASTROs agreed to do
15  the deal for $2,150. The subsequent transaction between the UC and HIGUERA lasted
16  less than one minute. The UC provided HIGUERA with $2,150 of DEA buy money and
17  HIGUERA provided the UC with a substance that field-tested positive for the presence of
18  heroin and weighed 83.4 gross grams (with packaging).

19      59.    Additionally, during a search of the "Cookies" portion of the returned
20  warrant materials for Subject Account 8, I found Subject Account 1, Subject Account 3,
21  Subject Account 6, Subject Account 7, and an account under the name "RUDY
22  JACKSON" (SUBJECT ACCOUNT 9) listed as accounts accessed by the same
23  electronic device and under the same "cookie." Again, this indicates a very high
24  probability that the same person(s) (i.e., the CASTROs) is using all of these Subject
25  Accounts, including SUBJECT ACCOUNT 9, since the same electronic device (i.e.,
26  computer, cell phone, or the like) is accessing all of the accounts.

27      60.    When I examined SUBJECT ACCOUNT 9's friends list and compared it to
28  the other Subject Accounts' friend lists (with the exception of Subject Account 4), I

AFFIDAVIT OF SAMUEL T. LANDIS - 17
USAO 2017R01238

1   found that the accounts all had multiple friends in common.  Additionally, agents have

2   previously identified most of these "friends" as suspected drug customers, further

3   indicating the CASTROs are utilizing SUBJECT ACCOUNT 9 as a means of connecting

4   with their suspected drug customers.

5          61.    On July 23, 2018, I submitted a preservation request for SUBJECT

6   ACCOUNT 9 through Facebook's law enforcement web portal in an effort to capture

7   future suspected drug related conversations over SUBJECT ACCOUNT 9, should the

8   CASTROs continue their pattern of deleting Facebook Messenger conversations.

9          **INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

10         62.    I anticipate executing this warrant under the Electronic Communications

11  Privacy Act, in particular Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A)

12  and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the

13  government copies of the records and other information (including the content of

14  communications) particularly described in Section I of Attachment B.  Upon receipt of

15  the information described in Section I of Attachment B, government-authorized persons

16  will review that information to locate the items described in Section II of Attachment B.

17         63.    As indicated in the Motion for Nondisclosure and Motion to Seal that

18  accompany this Affidavit, the government requests, pursuant to the preclusion of notice

19  provisions of Title 18, United States Code, Section 2705(b), that Facebook be ordered not

20  to notify any person (including the subscriber or customer to which the materials relate)

21  of the existence of this warrant for such period as the Court deems appropriate.  The

22  government submits that such an order is justified because notification of the existence of

23  this Order would seriously jeopardize the ongoing investigation.  Such a disclosure would

24  give the subscriber an opportunity to destroy evidence, change patterns of behavior,

25  notify confederates, or flee from prosecution.  Notifying our targets of the existence of

26  this investigation will likely cause them to destroy evidence, flee the jurisdiction, or alter

27  their methods, thus making it more difficult to dismantle the organization effectively.

28  Notice also could put the CS, UC, and agents working with them in danger

AFFIDAVIT OF SAMUEL T. LANDIS - 18
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

64.     It is further respectfully requested that this Court issue an order sealing all papers submitted in support of this application, including the application and search warrant, until such dates as provided in the proposed Order.  I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation.  Premature disclosure of the contents of this Affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

## COMMON CHARACTERISTICS OF DRUG TRAFFICKERS

65.     Based on my training and experience, including experience obtained through participation in this and other investigations involving the distribution of controlled substances, including those targeting long-term conspiracies responsible for the distribution of controlled substances, and based upon my consultation with other experienced law enforcement agents and officers, I know that:

a.     Drug trafficking conspiracies, especially those involving large amounts of narcotics and interstate shipments, usually take place over several months or years, and continue to operate even when enforcement activity results in arrests and/or seizures of drugs and/or money.

b.     Those involved in the distribution of illicit drugs often communicate by telephone in connection with their illegal activities in order to set up meetings with coconspirators, conduct drug transactions, or to arrange for the transportation drugs or drug proceeds.

## CONCLUSION

66.     Based upon the information which has been uncovered during the course of this investigation, and on the advice, experience, knowledge of other agents and officers involved in this investigation, I believe these facts establish probable cause to conclude that SUBJECT ACCOUNT 9 has been used, and will continue to be used, to facilitate violations of the Controlled Substances Act, specifically distribution of narcotics, conspiracy, and related offenses in the Western District of Washington, and elsewhere, in

AFFIDAVIT OF SAMUEL T. LANDIS - 19
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  violation of the Controlled Substances Act, Title 21, United States Code, Sections 841
2  and 846.

3
4                                    _____
                                     SAMUEL T. LANDIS,
5                                    Special Agent
                                     Drug Enforcement Administration
6

7

8  Subscribed and sworn to before me this _15ᵗ_ day of August, 2018.
9
10                                   _____
11                                   DAVID W. CHRISTEL
                                     UNITED STATES MAGISTRATE JUDGE
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF SAMUEL T. LANDIS - 20
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the following account, identified by Facebook user ID: rudy.jackson.7509 ("SUBJECT ACCOUNT 9"), for all such information that is stored at premises owned, maintained, controlled, or operated by Facebook, a company headquartered in Menlo Park, California.  This warrant is limited to information created after June 16, 2016.

AFFIDAVIT OF SAMUEL T. LANDIS - 21
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**ATTACHMENT B**

**Particular Things to be Seized**

**I.     Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under Title 18, United States Code, Section 2703(f), Facebook is required to disclose the following information to the government for the user IDs listed in Attachment A ("SUBJECT ACCOUNT 9"):

A. The following information about the customer or subscriber of SUBJECT ACCOUNT 9:

(a)     All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)     All activity log for SUBJECT ACCOUNT 9, and all other documents showing the user's posts and other Facebook activities;

(c)     All photos and videos in their original format, including EXIF information (metadata), uploaded by that user ID and all photos and videos in their original format, including EXIF information (metadata), uploaded by any user that have that user tagged in them;

(d)     All other records of communications and messages made or received by the user, including all private messages, chat history, calling history, and pending "Friend" requests;

(e)     All "check ins" and other location information;

(f)     All IP logs, including all records of the IP addresses that logged into SUBJECT ACCOUNT 9;

AFFIDAVIT OF SAMUEL T. LANDIS - 22
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   (g)   All past and present lists of friends created by SUBJECT ACCOUNT 9;

2   (h)   All records of Facebook searches performed by SUBJECT ACCOUNT 9;

3   (i)   The length of service (including start date);

4   (j)   The means and source of payment for such service (including any credit

5   card or bank account number) and billing records;

6   (k)   All records pertaining to communications between Facebook and any

7   person regarding the user or the user's Facebook account, including

8   contacts with support services and records of actions taken;

9   (l)   Names (including subscriber names, Facebook user IDs, and screen

10   names);

11   (m)   Addresses (including mailing addresses, residential addresses, business

12   addresses, and e-mail addresses);

13   (n)   Local and long distance telephone connection records;

14   (o)   Linked accounts; and

15   (p)   Telephone or instrument numbers or identities (including MAC addresses).

16   B.   All records and other information (not including the contents of communications)

17   relating to SUBJECT ACCOUNT 9, including:

18   (a)   Records of user activity for each connection activity for each connection

19   made to or from SUBJECT ACCOUNT 9, including log files; messaging

20   logs; the date, time, length, and method of connections; data transfer

21   volume; user names; and source and destination of Internet Protocol

22   addresses;

23   (b)   Information about each communication sent or received by SUBJECT

24   ACCOUNT 9, including the date and time of the communication, the

25   method of the communication (such as source and destination email

26   addresses, IP addresses, and telephone numbers); and

27   (c)   Records of any Facebook accounts that are linked to SUBJECT

28   ACCOUNT 9 by machine cookies (meaning all Facebook user IDs that

AFFIDAVIT OF SAMUEL T. LANDIS - 23
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   logged into Facebook by the same machine or device as SUBJECT

2   ACCOUNT 9).

3   **II.    Information to be seized by the government**

4   All information described above in Section I that relates to the ongoing narcotics

5   investigation described in the Affidavit, including, for the user ID identified on

6   Attachment A, information pertaining to the following matters:

7   (a) Any content including e-mails, messages, texts, photographs (including

8   metadata), videos (including metadata), visual images, documents,

9   spreadsheets, address lists, contact lists or communications of any type

10   which could be used to identify the user and or their location.

11   (b) Records relating to who created, used, or communicated with the user ID,

12   including records about their identities and whereabouts.

13   (c) All subscriber records associated with SUBJECT ACCOUNT 9, including

14   names, addresses, local and long distance telephone connection records, or

15   records of session times and durations, length of service (including start

16   date) and types of service utilized, telephone or instrument number or other

17   subscriber number or identity, including any temporarily assigned network

18   address, and means and source of payment for such service including any

19   credit card or bank account number.

20   (d) Any and all other log records, including IP address captures, associated

21   with SUBJECT ACCOUNT 9; and

22   (e) Any records of communications between Facebook and any person about

23   issues relating to the account, such as technical problems, billing inquiries,

24   or complaints from other users about SUBJECT ACCOUNT 9.  This is to

25   include records of contacts between the subscriber and the provider's

26   support services, as well as records of any actions taken by the provider or

27   subscriber as a result of the communications.

28

AFFIDAVIT OF SAMUEL T. LANDIS - 24
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800